Abran E. Vigil
Nevada Bar No. 7548
Lindsay Demaree
Nevada Bar No. 11949
BALLARD SPAHR LLP
100 North City Parkway, Suite 1750
Las Vegas, Nevada 89106-4617
Telephone:  702.471.7000
Facsimile:  702.471.7070
vigila@ballardspahr.com
demareel@ballardspahr.com

*Attorneys for Defendant*
*Specialized Loan Servicing, LLC*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MIAN Z. SHAHBAZ,<br><br>  Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, NATIONAL ASSOCIATION, SPECIALIZED LOAN SERVICING, LLC, NISSAN INFINITY LT, EXPERIAN INFORMATION SOLUTIONS, LLC,<br><br>  Defendants. | CASE NO. 2:15-cv-001854-GMN-VCF<br><br>**SPECIALIZED LOAN SERVICING, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |

Specialized Loan Servicing, LLC ("SLS") moves to dismiss plaintiff Mian Z. Shahbaz's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The complaint alleges a single cause of action against SLS for allegedly violating the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* (the "FCRA") because SLS reported allegedly "derogatory" information about plaintiff's debt to SLS after plaintiff filed a bankruptcy petition.  This claim fails for several reasons.

*First*, plaintiff's claim against SLS depends solely on the legal assumption that the FCRA bars a furnisher of information from reporting "derogatory" information about an account's delinquency for a time period when the accountholder is in bankruptcy.  Yet district courts throughout the Ninth Circuit have rejected this theory as a matter of law because reporting delinquency information for a debtor's

original obligation during the period that a bankruptcy is pending "is neither inaccurate nor misleading." *Mortimer v. Bank of Am., N.A.*, No. C-12-01959 JCS, 2013 WL 1501452, at *10 (N.D. Cal. Apr. 10, 2013). Plaintiff's complaint thus fails to allege any inaccuracy—a threshold requirement of an FCRA claim. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010).

***Second***, the FCRA provides a private cause of action against a furnisher only for a violation of the furnisher's obligation to conduct a reasonable investigation under 15 U.S.C. § 1681s-2(b). *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059-60 (9th Cir. 2002). Plaintiff provides no factual allegations about SLS's investigation, however. He offers only legal conclusions and recitations of the elements and thus fails to satisfy the pleading standards set forth in *Iqbal* and *Twombly*.

***Third***, even were the Court to decline to dismiss the FCRA claim in its entirety, at a minimum, plaintiff cannot demonstrate that SLS ***willfully*** violated the FCRA by reporting information for the time period that plaintiff's bankruptcy was pending. The United States Supreme Court has explained that a defendant does not act willfully under 15 U.S.C. § 1681n(a) unless its conduct was "objectively unreasonable" in light of "legal rules that were clearly established at the time." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69-70 (2007) (internal quotations omitted). Because there is no clearly established legal authority barring furnishers from reporting information during the pendency of bankruptcy—on the contrary, several district courts have found such reporting is not barred by the FCRA—plaintiff's willfulness claim necessarily fails and should be dismissed with prejudice.

Finally, SLS also notes that, in the event the United States Supreme Court reverses the Ninth Circuit's decision in *Robins v. Spokeo*, then plaintiff's claim may be subject to dismissal for lack of Article III standing. *See Spokeo, Inc. v. Robins*, 135 S. Ct. 1892, 191 L. Ed. 2d 762 (2015) (granting certiorari for *Robins v. Spokeo, Inc.*,

742 F.3d 409 (9th Cir. 2014)). Just like the plaintiff in *Spokeo*, plaintiff here has failed to allege any facts to support damages beyond a mere statutory violation.

For these reasons, plaintiff's FCRA claim against SLS should be dismissed.

## I.   PLAINTIFF'S FACTUAL ALLEGATIONS ABOUT SLS[1]

According to the *factual* allegations of plaintiff's complaint, plaintiff owed a debt to SLS. *See* Compl. ¶¶ 20, 58-59. On August 17, 2009, plaintiff filed for bankruptcy, including his debt to SLS among his scheduled obligations. *Id.* ¶¶ 19-20. Plaintiff eventually received a bankruptcy discharge over four years later, on April 7, 2014. *Id.* ¶ 21.

An Experian credit report March 24, 2015 provided the following information about plaintiff's debt to SLS:

- Nov2012 – Mar2014 (180 days past due)
- Account Balances in the Account History from Mar13 – Dec14

*Id.* ¶ 58. Plaintiff disputed this information with Experian, claiming that "[t]here should be no derogatory reporting after the filing date" of his bankruptcy petition. *Id.* ¶¶ 60, 62.

Plaintiff alleges that "Experian timely notified SLS of Plaintiff's dispute," but SLS continued to report the following information:

- Dec2012 – Oct2014 (180 days past due)
- Account Balances in the Account History from Jul13 – Apr15

*Id.* ¶¶ 64, 67, 69; *see also id.* ¶ 66. Plaintiff then concludes that his "continued efforts" to "correct" SLS's reporting "were fruitless" and that SLS's reported information "damaged [his] creditworthiness," without any factual elaboration. *Id.* ¶¶ 74, 76.

---

[1] SLS does not concede any fact, but accepts the plaintiff's allegations as true for purposes of this motion only. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (accepting allegations in the complaint as true to decide a motion to dismiss).

Based on these allegations, plaintiff asserts a single claim against SLS for violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. *See id.* ¶¶ 78-81. Plaintiff further claims that this purported violation was willful. *Id.* ¶¶ 75, 80.

## II.  PLAINTIFF'S BANKRUPTCY – A MATTER OF PUBLIC RECORD[2]

Plaintiff's allegations center on his bankruptcy case filed on August 17, 2009 in the United States Bankruptcy Court for the District of Nevada as case number 09-25055 (the "Bankruptcy"). *See* Compl. ¶ 21. As provided in the Bankruptcy filings, plaintiff scheduled a debt to "Countrywide Home Lending," which was secured by a deed of trust on plaintiff's home (the "Mortgage"). **Exhibit 1** (Bankruptcy Doc. 1) at p. 13. "BAC Home Loans Servicing, L.P. fka Countrywide Home Loans Servicing, L.P." filed a proof of claim, **Exhibit 2** (Bankruptcy Claim 7-1), which was transferred to SLS, *see* **Exhibit 3** (Bankruptcy Doc. 56).

Plaintiff's confirmed chapter 13 plan identifies the Mortgage as a Class 2A "Secured Real Estate Mortgage." **Exhibit 4** (Bankruptcy Doc. 40) at pp. 4-5. While the trustee is responsible for making payments on the Mortgage during the course of the bankruptcy, the Plan states that "CLASS 2 claims are not modified by this plan and the creditor shall retain its existing lien until paid in full." *Id.* at p. 4. Contrary to the Complaint's allegation that plaintiff was "never delinquent" on his mortgage after he filed bankruptcy, Compl. ¶ 61, plaintiff repeatedly defaulted on his payment obligations under his chapter 13 plan, which prompted the trustee to seek dismissal of plaintiff's bankruptcy case on two separate occasions. *See* **Exhibit 5** (Bankruptcy

---

[2] On a motion to dismiss, a court may take judicial notice of court matters of public record without converting the motion to one for summary judgment. *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Court filings are considered matters of public record. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) (taking "judicial notice of court filings and other matters of public record"). SLS requests that the Court take judicial notice of the cited bankruptcy court filings, which are public records provided as exhibits to this motion. *In re Icenhower*, 755 F.3d 1130, 1142 (9th Cir. 2014) (holding that "[j]udicial notice may be taken 'at any stage of the proceeding'" and must be granted "'if a party requests it and the court is supplied with the necessary information'" (quoting Fed. R. Evid. 201(c) & (d))).

Doc. 49); **Exhibit 6** (Bankruptcy Doc. 64). As a result, the Bankruptcy Court recognized there was a "mortgage delinquency" and ordered plaintiff to cure it. **Exhibit 7** (Bankruptcy Doc. 70).

## III. PLAINTIFF'S FCRA CLAIM AGAINST SLS SHOULD BE DISMISSED

### A. Standard of Review

District courts apply a two-step process to determine a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Amistad Christiana Church v. Life Is Beautiful, LLC*, ___ F. Supp. 3d ___, ___, 2015 WL 5532299, *2 (Sept. 18, 2015). First, a district court must identify the complaint's factual allegations. *See id.* While the court must accept as true the well-pleaded *factual* allegations, legal conclusions "are not entitled to the same assumption of truth even if cast in the form of factual allegations." *Id.* Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Second, the district court must determine whether the factual allegations give rise to a *plausible* claim for relief. *Id.* at 679; *Amistad Christiana Church*, 2015 WL 5532299 at *2. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard requires more than "a sheer possibility" of liability. *Id.* Thus, a complaint that alleges facts "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted); *see also Amistad Christiana Church*, 2015 WL 5532299 at *2. Deciding whether an alleged claim is plausible is "a context-specific task that requires the district court to draw on its judicial experience and common sense." *Amistad Christiana Church*, 2015 WL 5532299 at *2 (internal alteration omitted).

///

### B.     <u>Plaintiff Fails to State a Claim under the FCRA</u>

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (internal quotation omitted). The FCRA regulates, among other things, creditors and other parties who "furnish" information to credit reporting agencies ("CRA"). *See* 15 U.S.C. § 1681s-2. A furnisher must report accurate information to a CRA, 15 U.S.C. § 1681s-2(a), and must investigate a consumer's dispute about reported information when notified about the dispute by a CRA, 15 U.S.C. § 1681s-2(b). Only a failure to investigate under subsection (b) gives rise to a private cause of action. *Nelson*, 282 F.3d at 1059-60.

Section 1681s-2(b) states that, after a furnisher receives notice of a consumer dispute from a CRA, the furnisher must: investigate the dispute; review all relevant information provided by the CRA; report the investigation results to the CRA; if the investigation uncovers incomplete or inaccurate information, report the results to any other CRA to which the furnisher reported the information; and modify, delete, or permanently block reporting of the disputed information if that information is found to be inaccurate, incomplete, or unable to be verified. 15 U.S.C. § 1681s-2(b)(1)(A)-(E); *Gorman*, 584 F.3d at 1154. The Ninth Circuit has explained that an actual inaccuracy must exist for a plaintiff to state an FCRA claim. *Carvalho*, 629 F.3d at 890; *see also Hernandez v. Wells Fargo Home Mortgage*, No. 2:14-CV-1500, 2015 WL 1204985, at *3 (D. Nev. Mar. 16, 2015); *Giovanni v. Bank of Am., N.A*, No. C 12-02530 LB, 2012 WL 6599681, at *5 (N.D. Cal. Dec. 18, 2012) (*Giovanni I*); *Mortimer v. JP Morgan Chase Bank, N.A.*, No. C 12-1936 CW, 2012 WL 3155563, at *3 (N.D. Cal. Aug. 2, 2012).

///

///

///

### 1. *Plaintiff Fails to Allege an Inaccuracy*

i. It Is Not Inaccurate to Report that Plaintiff Had Failed to Pay Debts for the Period after He Filed a Bankruptcy Petition

Plaintiff's claim against SLS relies on the legal conclusion that the FCRA bars a furnisher from reporting a delinquency on a pre-bankruptcy petition obligation that occurred during the period of the bankruptcy. *See* Compl. ¶ 59. District courts throughout the Ninth Circuit have rejected plaintiff's legal theory, finding that such reporting on an original obligation is not inaccurate. *E.g.*, *Sheridan v. FIA Card Servs., N.A.*, No. C13-01179 HRL, 2014 WL 587739, at *5 (N.D. Cal. Feb. 14, 2014); *Mortimer v. Bank of Am., N.A.*, No. C-12-01959 JCS, 2013 WL 1501452, at *9 (N.D. Cal. Apr. 10, 2013); *Giovanni I*, 2012 WL 6599681, at *5; *Harrold v. Experian Information Solutions, Inc.*, No. C 12–02987 WHA, 2012 WL 4097708, at *4 (N.D. Cal. Sept. 17, 2012); *Mortimer v. JP Morgan Chase Bank, N.A.*, 2012 WL 3155563, at *3; *see also Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *3 (E.D. Mich. July 21, 2011).

Thus, "reports of delinquencies in payment while bankruptcy proceedings are still ongoing is not 'incomplete or inaccurate' information." *Harrold,* 2012 WL 4097708, at *4. The district court's analysis in *Mortimer* is instructive. Just like this case, the plaintiff in *Mortimer* alleged that the furnisher violated the FCRA by reporting that his account was delinquent for the period after he filed his bankruptcy petition. *Mortimer*, 2012 WL 3155563, at *3. Also like this case, the plaintiff did not claim that he actually made the payments reported as missing. *Id.* The district court dismissed plaintiff's FCRA claim with prejudice, explaining that plaintiff failed to identify an inaccuracy:

///

///

///

///

> Mortimer has not alleged that he was timely in making payments on his Chase account [during the period of bankruptcy]. Thus, Mortimer has not alleged an inaccuracy or misleading statement for the purposes of his FCRA claim.

*Id.* at *7. Plaintiff here likewise fails to identify an actionable inaccuracy. He does *not* allege that he had, in fact, been paying his debt to SLS, or any other factual inaccuracy.

Furthermore, the fact that plaintiff ultimately received a discharge in bankruptcy does not render inaccurate the fact that he was delinquent on his obligation during bankruptcy. *See Sheridan*, 2014 WL 587739, at *5 ("[I]t was factually accurate for FIA to report that her accounts were past due during [period of bankruptcy], and such reporting of historically accurate information does not later become inaccurate under the FCRA when the debts are subsequently discharged in bankruptcy.").

In addition, plaintiff's contention that SLS's reporting was inconsistent with industry standards, even if presumed true for this motion, cannot establish an actionable inaccuracy given that plaintiff has not—and cannot—allege that the FCRA *requires* furnishers to follow such standards. *See Giovanni II*, 2013 WL 1663335, at *6 (dismissing complaint where plaintiff failed to allege that furnisher was required to follow the Metro 2 Format).

In fact, for plaintiff's position is based on a misunderstanding of how bankruptcy works. The filing of bankruptcy does not – as plaintiff argues – render pre-bankruptcy contract terms null and void. This argument flies in the face of basic principles of bankruptcy law, including the effect of the automatic *stay*, which acts, as the name implies, not as a permanent alteration but merely a temporary "breathing spell" for the debtor to consider which contracts to assume—on pre-bankruptcy terms—and which to reject. *See* 11 U.S.C. §§ 362, 365, 1322(b)(7) (noting that plan may provide for assumption or rejection of prepetition contracts pursuant to 11 U.S.C. § 365).

1    Even assuming *arguendo* plaintiff were correct that his chapter 13 plan voided
2 the terms of his pre-petition contract to SLS (as explained above, they did not), that
3 proposition would not help plaintiff here. As discussed above, plaintiff's bankruptcy
4 filings demonstrate that he repeatedly defaulted *even on his obligations under his*
5 *chapter 13 plan*, and thus viewed from that standpoint as well, SLS's reporting of
6 "derogatory" information for the period of the bankruptcy was not inaccurate.

7              ii.    The Applicable Law and Plaintiff's Own Bankruptcy Filings
8                     Further Undermine Plaintiff's Claim

9    Plaintiff's assertion that SLS reported on "pre-bankruptcy contract terms
10 [that] were no longer enforceable upon the bankruptcy filing," Compl. ¶ 28, also is
11 wrong because the Mortgage's "pre-bankruptcy contract terms" remained in effect
12 under the terms of the confirmed chapter 13 plan. The plan lists the Mortgage as a
13 Class 2 secured claim, which is "***not*** **modified by this plan**." Exhibit 4 (Bankruptcy
14 Doc. 40) at ¶ 2.12 (emphasis added).

15    Moreover, the Bankruptcy Code expressly prohibits a chapter 13 plan from
16 modifying the rights of a creditor under a mortgage secured by the debtor's principal
17 residence, like the Mortgage here.³ Under 11 U.S.C. § 1322(b)(2), a chapter 13 plan
18 may modify the rights of secured creditors, **except for** the rights of a creditor holding
19 "a claim secured only by a security interest in real property that is the debtor's
20 principal residence." *See also Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 327 (1993)
21 (explaining that the terms of a chapter 13 plan are "subject to *special protection for*
22 *creditors whose claims are secured only by a lien on the debtor's home*" (emphasis
23 added)). This "favorable treatment of residential mortgagees was intended to

---

³ Plaintiff's bankruptcy petition identifies his address as 10124 Hollis Mountain Ave., Las Vegas, Nevada 89148. Exhibit 1 (Bankruptcy Doc. 1) at 1. Plaintiff claims this residence as an exemption under NRS 21.090(1)(m), which exempts "the dwelling of the judgment debtor occupied as a home for himself or herself and family. . ." *See id.* at p. 15. The same residence also secures plaintiff's mortgage obligation to SLS. *See* Exhibit 2 (Bankruptcy Claim 7-1) at p. 6.

encourage the flow of capital into the home lending market." *Id.* at 332 (Stevens, J., concurring).

Nor does the discharge injunction limit SLS's ability to report to credit bureaus as plaintiff contends. Section 524 of the Bankruptcy Code governs the "[e]ffect of discharge." 11 U.S.C. § 524. Under this provision, a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). But, just like § 1322(b)(2), there is an exception to § 524(a)(2) for residential mortgagees:

> Subsection (a)(2) does not operate as an injunction against an act by a creditor that is the holder of a secured claim, if—
>
> (1) such creditor retains a security interest in real property that is the principal residence of the debtor;
>
> (2) such act is in the ordinary course of business between the creditor and the debtor; and
>
> (3) such act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien.

11 U.S.C. § 524(j). Subsection (j) explicitly authorizes a creditor with a security interest in plaintiff's principal residence to continue to pursue mortgage payments. This provision makes sense in light of § 1322(b)(2)'s prohibition against modifying the rights of mortgagees.

Here, public records and plaintiff's own admissions demonstrate that SLS satisfies the requirements of subsection (j): SLS is secured by a security interest in plaintiff's home, *see* Exhibits 1-3 & footnote 3, *supra*; SLS "regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency," Compl. ¶ 15; and, SLS's reporting was based on its "enforcement" of plaintiff's Mortgage obligation, Compl. ¶ 28. Plaintiff has not—and cannot—allege

otherwise.

### 2. Plaintiff Offers Only Labels, Conclusions, and Formulaic Recitations of Elements to Allege SLS Failed to Comply with Section 1681s–2(b)

In addition to his failure to allege an actionable inaccuracy, plaintiff also fails to plead sufficient factual allegations to give rise to a plausible claim for relief. Plaintiff bears the burden of showing that SLS's investigation of his dispute was unreasonable. *Gorman*, 584 F.3d at 1154, *cited by O'Connor v. Capital One, N.A.*, No. CV 14-00177-KAW, 2014 WL 2215965, at *7 (N.D. Cal. May 29, 2014). Yet the complaint's factual allegations merely state that plaintiff disputed SLS's reporting information with Experian, Experian notified SLS of the dispute, and SLS continued to report "derogatory" information for the time after plaintiff filed bankruptcy. *See* Compl. ¶¶ 60, 64, 69. Plaintiff provides no factual information from which this Court can reasonably infer that SLS failed to conduct a reasonable investigation or comply with its other obligations under 15 U.S.C. 1681s-2(b)(A)-(E). Instead, he simply recites the FCRA's requirements. *See* Compl. ¶¶ 68, 71-73.

*Iqbal* and *Twombly* are clear that such a formulaic recitation of elements cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555; *see also Amistad Christiana Church*, 2015 WL 5532299 at *2. District courts within the Ninth Circuit have dismissed similarly insufficient attempts to plead an FCRA claim. *E.g., O'Connor*, 2014 WL 2215965, at *7 (dismissing FCRA claim where plaintiff "fail[ed] to offer any factual allegations supporting his contention that Defendant's investigation of his disputed account was unreasonable"); *Berberyan v. Asset Acceptance, LLC,* CV 12–4417–CAS PLAX, 2013 WL 1136525, at *5 (C.D. Cal. Mar. 18, 2013) (finding allegation that furnisher "fail[ed] to conduct a proper investigation" was insufficient to state a section 1681s–2(b) claim.); *Iyigun v. Cavalry Portfolio Services, LLC*, CV–12–8682, 2013 WL 93114, at * 1 (C.D. Cal. Jan. 8, 2013) (explaining that "although [plaintiff] is not required to plead facts she cannot know prior to engaging in discovery, she must at least plead facts regarding the dispute to

put [defendant] on notice as to the necessary manner of investigation"). This Court should follow suit and dismiss plaintiff's conclusory pleading against SLS.

### C. Plaintiff Fails to State a Claim for a Willful Violation of the FCRA

Not only does the complaint fail to allege that SLS's reporting was inaccurate and that SLS failed to conduct a reasonable investigation, it also fails to state a claim for any *willful* FCRA violation. *See* Compl. ¶¶ 80-81 (claiming damages for willful FCRA violations under 15 U.S.C. § 1681n and for negligent FCRA violations under 15 U.S.C. § 1681o).

A willful violation of the FCRA requires that the defendant acted either with actual knowledge that the actions violated the FCRA or in "reckless disregard" of its statutory duty. *Safeco*, 551 U.S. at 57-58 (analyzing 15 U.S.C. § 1681n(a)). As the Supreme Court held in *Safeco*, a defendant does not act willfully under 15 U.S.C. § 1681n(a) unless its conduct was "objectively unreasonable" in light of "legal rules that were 'clearly established' at the time." 551 U.S. at 69-70 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). Thus, a claim for a willful violation fails unless the conduct at issue was clearly unlawful as established by either "pellucid statutory text" or an "authoritative" interpretation of that text by a federal court of appeals or the Consumer Finance Protection Bureau ("CFPB").[4] *Id.* at 70; *see also Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318-19 (11th Cir. 2009) (holding that a defendant "does not recklessly violate the [FCRA] when it acts in accord with an objectively reasonable interpretation of the Act.").

Significantly, the *Safeco* "objectively unreasonable" test presents a pure question of law; when it is not satisfied, a willfulness claim cannot proceed. *Safeco*, 551 U.S. at 70 n.20; *see also Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 377 (3d Cir. 2012) (explaining that *Safeco* "held that evidence of subjective bad faith or

---

[4] *Safeco* refers to the Federal Trade Commission ("FTC"), the agency tasked with enforcing the FCRA in 2007. In 2011, the CFPB took over the FTC's enforcement responsibilities, prompting the FTC to withdraw its statutory comments.

1  intent of the defendant is irrelevant when there is an objectively reasonable
2  interpretation of the statute that would allow the conduct in question"); *Murray v.*
3  *New Cingular Wireless Servs., Inc.*, 523 F.3d 719, 726-27 (7th Cir. 2008) (noting that
4  willfulness standard is "objective" and any inquiry into whether defendant "kn[ew] it
5  was violating the Act" is "erroneous in light of Safeco"). Thus, in *Long*, the Third
6  Circuit affirmed the dismissal of a willfulness claim at the motion to dismiss stage
7  where the defendant proposed a reading of the pertinent statute that, while
8  incorrect, was not objectively unreasonable. 671 F.3d at 377.

9  The Court here should likewise dismiss with prejudice any claim that SLS
10 willfully violated the FCRA by reporting information during the pendency of
11 plaintiff's bankruptcy. Even if SLS's reporting could be found inaccurate (it was not),
12 it certainly was not objectively unreasonable. There is there no "pellucid statutory
13 text" or authoritative interpretation on bankruptcy reporting requirements under the
14 FCRA. On the contrary, several district courts agree with SLS's interpretation. *E.g.*,
15 *Sheridan*, 2014 WL 587739, at *5; *Mortimer v. Bank of Am., N.A.*, 2013 WL 1501452,
16 at *9; *Giovanni I*, 2012 WL 6599681, at *5; *Harrold*, 2012 WL 4097708, at *4;
17 *Mortimer v. JP Morgan Chase Bank, N.A.*, 2012 WL 3155563, at *3; *Evans*, 2011 WL
18 2936198, at *3. Plaintiff's willfulness allegation cannot, as a matter of law, satisfy
19 the *Safeco* test. Thus, the Court should, at a minimum, dismiss any attempt to
20 assert a claim for a willful FCRA violation.

21    D.    Plaintiff May Also Lack Standing

22 While plaintiff alleges SLS's reporting (as opposed to his bankruptcy or other
23 reported debts) "damaged [his] creditworthiness," Compl. ¶ 76, he fails to allege that
24 he was denied any particular credit opportunities, or any other facts to support his
25 conclusory claim. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555; *Amistad*
26 *Christiana Church*, 2015 WL 5532299 at *2. Disregarding that conclusory allegation
27 as the Court must, the complaint pleads only the mere violation of plaintiff's
28 statutory rights under the FCRA. Whether such a statutory violation alone is

sufficient to confer Article III standing is a question that is currently pending before the Supreme Court. *See Spokeo, Inc. v. Robins*, 135 S. Ct. 1892, 191 L. Ed. 2d 762 (2015) (granting certiorari for *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014)). In *Robins v. Spokeo, Inc.*, the Ninth Circuit held that an FCRA violation is a sufficient injury in fact for Article III standing even if the plaintiff suffered no actual harm. *Robins*, 742 F.3d at 413. If the Supreme Court rejects this holding, then plaintiff's claim here also should be dismissed for lack of standing. *See* Fed. R. Civ. P. 12(b)(1).

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss plaintiff's FCRA claim against SLS.

Dated: November 6, 2015

BALLARD SPAHR LLP


By: /s/ Lindsay Demaree
Abran E. Vigil
Nevada Bar No. 7548
Lindsay Demaree
Nevada Bar No. 11949
100 North City Parkway, Suite 1750
Las Vegas, Nevada 89106

*Attorneys for Defendant
Specialized Loan Servicing, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on the 6th day of November, 2015, and pursuant to Fed. R. Civ. P. 5(b), I served Defendant's Motion to Dismiss Plaintiff's Complaint via CM/ECF to all counsel as listed on the CM/ECF-generated Notice of Electronic Filing to receive notice via electronic service in this matter.

.

    /s/ Mary Kay Carlton
An Employee of Ballard Spahr LLP